## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

AMIR KHILLAH,

       Plaintiff,

v.

CITY OF KALAMAZOO,
a Municipal Corporation,

       Defendant.

Case No. 1:18-cv-00696-JTN-ESC

Hon. Janet T. Neff

---

| | |
|---|---|
| Michael L. Pitt (P24429) | OFFICE OF THE KALAMAZOO CITY |
| PITT, MCGEHEE, PALMER & RIVERS, P.C. | ATTORNEY'S OFFICE |
| Attorney for Plaintiff | RICHARD O. CHERRY (P77272) |
| 117 West Fourth Street, Suite 200 | SARAH R. WENZLICK (P79316) |
| Royal Oak, MI 48067 | Attorney for Defendant |
| 248-398-9800 | 241 W. South Street, Ste. 301 |
| mpitt@pittlawpc.com | Kalamazoo, MI 49007 |
| | 269-337-8185 |
| Kevin M. Carlson (P67704) | cherryr@kalamazoocity.org |
| KEVIN M. CARLSON PLLC | wenzlicks@kalamazoocity.org |
| Attorney for Plaintiff | |
| P.O. Box 6028 | |
| Plymouth, MI 48170 | |
| 734-386-1919 | |
| kevin@kevincarlsonlaw.com | |

---

## DEFENDANT'S ANSWER TO PLAINTIFF'S

Defendant, City of Kalamazoo, by and through its attorneys, Office of the Kalamazoo

City Attorney's Office, Sarah R. Wenzlick, Assistant City Attorney, and pursuant to Rules 7 and

8 of the Federal Rules of Civil Procedure, submits their Answer, Affirmative Defenses and Jury

Demand to Plaintiff's Complaint as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Amir Khillah ("Khillah") is a resident of Kalamazoo, Michigan and former employee of Defendant, City of Kalamazoo ("the City").

**ANSWER: Admit that Plaintiff is a former employee of Defendant, City of Kalamazoo. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 1.**

2.      Defendant City of Kalamazoo is municipal corporation located in Kalamazoo County, Michigan.

**ANSWER: Admit.**

3.      This Court has subject matter jurisdiction over Plaintiff's claims for national origin discrimination and retaliation because they arise under federal law, specifically 42 U.S.C. § 1983, and are brought to enforce rights guaranteed by federal law, specifically, 42 U.S.C. § 1983.

**ANSWER: Defendant admits that this Court has jurisdiction over the claims alleged in this Complaint.**

4.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims for national origin discrimination and retaliation under the Michigan Elliott-Larsen Civil Rights Act as well as Michigan's Whistleblowers' Protection Act because the claims under state law arise out of the same set of operative facts as Plaintiff's federal claims, such that the claims are all part of the same case or controversy.

**ANSWER: Defendant admits that this Court has jurisdiction over the state claims alleged in this Complaint.**

2

5.      Venue is proper in the Western District of Michigan because all parties reside in the Western District of Michigan and the events giving rise to the Plaintiff's claims occurred in the Western District of Michigan.

**ANSWER: Admit that venue is proper.**

## GENERAL ALLEGATIONS

6.      Plaintiff Amir Khillah is currently 38 years-old.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.**

7.      Khillah is an American citizen of Egyptian descent and national origin.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.**

8.      Khillah is part of an Afrocentric race, with brown skin and with a Middle Eastern/North African ethnic identity.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.**

9.      Khillah began his employment with Defendant City of Kalamazoo on May 25, 2015 as a Public Safety Officer ("PSO") working in the Kalamazoo Department of Public Safety ("KDPS").

**ANSWER: Deny as this allegation is untrue.**

10.      Throughout his employment with the City, Khillah was an outstanding officer, receiving multiple commendations, awards and recognition for his work.

**ANSWER: Defendant admits that Plaintiff received commendations, awards and recognition for his work, however, Defendant denies the remaining allegations in paragraph 10.**

11.    These commendations include:

a.    May 2, 2016: commendation for "outstanding performance and dedication" and "proactive law enforcement practices, keen investigative skills and heightened situational awareness..."

b.    May 26, 2016: promotion from PSO I to PSO II;

c.    September 1, 2016: commendation for proactive patrol;

d.    November 11, 2016: commendation for outstanding performance including: "Your alert patrol activities and outstanding investigation during this incident no doubt contributes to a safer and more secure Kalamazoo community."

e.    December 1, 2016: commendation for Khillah and PSO Fountain for "outstanding performance" in response to a threatened suicide at a middle school, and ability "to mitigate this very intense deadly force encounter..."

f.    December 11, 2016: commendation for "kindness and compassion" after Khillah investigated a vandalism complaint and then voluntarily took the time to remove the graffiti tag with his personal graffiti remover;

g.    January 27, 2017: commendation for proactive police work in the investigation and interview of a suspect leading to a confession and location of other illegal firearms, stating: "PSO Amir Khillah's actions serve as a sterling example for all and are in keeping with the finest KDPS traditions. Your professionalism reflects

great credit upon yourself, the Kalamazoo Department of Public Safety, and the City of Kalamazoo."

h. March 5, 2017: commendation for conduct in locating and saving a suicidal teenager, stating: "Because of your determination and quick action, a young man on the verge of serious injury or death received the assistance he needed. We commend you for your dedication to duty and professionalism."

i. March 7, 2017: commendation for "quick and courageous action, and …professionalism in the handling of [a] perilous incident."

j. April 22, 2017: commendation for investigation leading to confession of arson and arrest of arson suspect after a residential fire;

k. May 4, 2017: professional excellence award;

l. May 21, 2017: commendation for outstanding performance;

m. October 19, 2017: lifesaving medal for entering a burning apartment building and rescuing an unresponsive victim from "certain death" in a fire; and

n. January 15, 2018: commendation for positive engagement with high school students in speaking with high school class about recent police events, including use of force incidents from a police officer's perspective, as well as school safety.

**ANSWER: Admit that Plaintiff received the commendations on the dates contained in subparagraphs a-n.**

12. On November 16, 2017, Chief Jeff Hadley resigned his employment with KDPS.

**ANSWER: Denied as this allegation is untrue.**

13.     After Chief Hadley resigned, KDPS assigned Sergeant Robert Holdwick to supervise Khillah. Sgt Holdwick served as a Marine in Iraq and he would frequently discuss his war experiences in my presence.

**ANSWER: Admit that Sergeant Holdwick was assigned to supervise Plaintiff. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 13.**

14.     Sgt. Holdwick repeatedly harassed, dominated and micro-managed Khillah, including reassigning Khillah from investigation duty to traffic duty, and reassigning Khillah to other lesser responsibilities.

**ANSWER: Denied as these allegations are untrue.**

15.     In early January - early February 2018, Khillah pulled over a black motorist and resolved the issue giving rise to the traffic stop without issuing a ticket.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.**

16.     Sergeant Holdwick ordered Khillah to meet him at the end of the street to discuss the situation.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.**

17.     During this discussion, Holdwick asked Khillah why he had not issued a ticket to the motorist and claimed that a study had found the KDPS was giving out more tickets to white people than black people.

**ANSWER: Denied as this allegation is untrue.**

18.     Holdwick effectively reprimanded Khillah for not citing a black motorist and instructed Khillah to cite African-American citizens based on their race.

**ANSWER: Denied as this allegation is untrue.**

19.     In fact, members of the Kalamazoo community have long criticized the KDPS for racial discrimination and racial profiling.

**ANSWER: Denied as this allegation is untrue.**

20.     In 2013, the City released the results of a year-long study by Lamberth Consulting showing that black motorists were more than two times as likely to be stopped by police in the City of Kalamazoo than white drivers.

**ANSWER: Admit that the City released the results of the study by Lamberth Consulting in 2013. Deny that the results were limited to the finding that black motorists were more than two times as likely to be stopped by police in the City of Kalamazoo than white drivers.**

21.     The study further found that "relative to the percentage of black motorists stopped by police, fewer are given citations but more are asked by officers to exit their vehicle and searched, 'and considerably more are handcuffed and arrested.'"(MLive.com, Racial Profiling study results not a surprise but still 'troubling,' Kalamazoo city commissioners say, Sept. 4, 2013).

**ANSWER: Admit that the article cited by Plaintiff references the findings listed in paragraph 21.**

22.     In January 2018, Khillah (a mixed martial arts fighter and martial arts instructor), had facial reconstructive surgery to treat an old injury.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.**

23.    During recovery from surgery, Khillah's nose would bleed in the cold air, so he wrapped a traditional Egyptian scarf around his face.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23.**

24.    Sergeant Holdwick, upon observing Khillah wearing the scarf, called him a "hajji" in the presence of other officers.

**ANSWER: Admit that Sergeant Holdwick used the term "hajji." Deny the remaining allegations in paragraph 24.**

25.    "Hajji" is a term used as a racist slur against people of Middle Eastern, North-African and South Asian people in general. This term was regularly used by United States military personnel serving in Iraq.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.**

26.    On other occasions, Sgt. Holdwick in Khillah's presence bragged about conducting check points in Iraq and yelling at Iraqi citizens "Marine 'taftesh' bitch." The literal translation of this phrase is "Marine inspection/search bitch."

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.**

27.    In the course of a subsequent investigation, Sergeant Holdwick admitted using the term "hajji."

**ANSWER: Admit.**

28.     On January 26, 2018, the City suspended Khillah without pay for four days.

**ANSWER: Admit.**

29.     On February 20, 2018, Khillah sent an e-mail to KDPS Chief Karianne Thomas in which he raised several issues, including the following:

a.   "Right after being hired in 2015, I began hearing the disgruntled PSOs making jokes about 'already certified officers' being passed up so people like me could get hired...people like me being older, minorities, who get sponsored through the police academy when they had to pay for their own."

b.   "I began having issues with my supervisor, Sgt. Holdwick because I was getting ahead of myself. I admittedly have some areas I need to improve in report writing, including being more detailed and making sure everything is in chronological order. Sgt. Holdwick has been helping me with that."

c.   "I wanted to write search warrants, conduct a controlled buy, or at least a delivery, simply search vehicles on the probable cause of the odor of marijuana, but I was denied doing so by Sgt. Holdwick."

d.   "Sgt. Holdwick has not been an empowering supervisor and I am having a very difficult time working under his command."

e.   "On three occasions other PSOs have stuck up for me with Sgt. Holdwick and it seems to make him target me even more."

f.   "On another occasion, in the locker room of station 2, I was dressing in my civilian clothing to go home. I had a traditional Arabic scarf that I was putting on as I walked out of the locker room. Sgt. Holdwick said something to the effect of 'hey Haji' to me. Another PSO, I do not remember who was present, said 'hey you

can't say that to him.' Sgt. Holdwick replied 'what it is a term of endearment. It means he has been to Macca.' It should be noted that Haji is a racial slur used to describe terrorists and insurgents. Similar to Somali's being called Skinnies, or Japanese being called 'gooks.' Furthermore, it should be noted that I am Christian and fled from Egypt to the United States on religious asylum due to religious persecution."

g.   "Now, I was informed that Sgt. Holdwick has started an internal affairs investigation on me. I do not know the charges, but I am sure they are not founded and, at worst, an error on my part. I feel that I am under constant scrutiny and that I'm working under a microscope."

h.   Chief, I have want so badly to fit in and be one of the guys. I know sending you this will probably make that impossible for me. But I just love the job too much to throw in the towel and continue to keep quiet with my head down."

**ANSWER: Admit that Plaintiff sent an e-mail to KDPS Chief Karianne Thomas raising the issues stated in subparagraphs a-h.**

30.   On or about February 22, 2018, Khillah filed a complaint with Human Resources based on the unfair discriminatory treatment of Sergeant Holdwick, including: (1) Sgt. Holdwick using the racial slur "hajji" in reference to Khillah; (2) not allowing Khillah to conduct a probable cause search on a vehicle even with the presence of the odor of marijuana; (3) when Khillah's partner objected to Sgt. Holdwick's order that Khillah not perform the search, Holdwick's response was, "Khillah needs to learn to let things go;" (4) Pulling Khillah off of surveillance on a drug house project and assigning him to "speeding patrol," even though his

partner volunteered for speeding patrol and explained that Khillah was busy with the drug house; and (5) Sgt. Holdwick instructing Khillah to cite African-American citizens based on their race.

**ANSWER: Admit that Plaintiff filed a complaint with Human Resources alleging discriminatory treatment by Sergeant Holdwick.**

31.     On February 27, 2018, the City placed Khillah on administrative leave with pay pending an internal investigation into a traffic stop and subsequent report written by Khillah on February 6, 2018.

**ANSWER: Admit.**

32.     This investigation was triggered by accusations of misconduct brought against Khillah by Sergeant Holdwick.

**ANSWER: Denied as these allegations are untrue.**

33.     Sergeant Holdwick's accusations of misconduct against Khillah were false.

**ANSWER: Denied as these allegations are untrue.**

34.     Sgt. Holdwick's false accusations against Khillah were motivated by Holdwick's discriminatory predisposition against Khillah and were brought in retaliation against Khillah for opposing and reporting Holdwick's discriminatory behavior.

**ANSWER: Denied as these allegations are untrue.**

35.     In the course of the investigation, Sgt. Holdwick falsely accused Khillah of misconduct in the course of the February 6, 2018 traffic stop and report, and further falsely accused Khillah of lying about the events of February 6, 2018.

**ANSWER: Denied as these allegations are untrue.**

11

36.     In the course of the investigation, Assistant Chief VanderWiere falsely accused Khillah of misconduct in the course of the February 6, 2018 traffic stop and report, and further falsely accused Khillah of lying about the events of February 6, 2018.

**ANSWER: Denied as these allegations are untrue.**

37.     The City terminated Khillah's employment on March 27, 2018.

**ANSWER: Admit.**

38.     The City's decision to terminate Khillah's employment is allegedly based on misconduct relative to the traffic stop and arrest on February 6, 2018, including intentional falsification of his report, failure to comply with traffic laws, misrepresenting the facts of the case to Sgt. Holdwick, and wrongful arrest.

**ANSWER: Denied as these allegations are untrue.**

39.     The City's decision to terminate Khillah's employment based on these allegations of misconduct are part of a pattern and practice of disparate treatment based on race and national origin, and were used merely as a pretext to hide the City's discriminatory and retaliatory motive against Khillah, as demonstrated by the following specific facts:

**ANSWER: Denied as these allegations are untrue.**

a.      The accusations of misconduct against Khillah are false;

**ANSWER: Denied as these allegations are untrue.**

b.      There are 220 officers employed by KDPS and most them are white;

**ANSWER: Denied as these allegations are untrue.**

c.      All persons in the chain of command related to the investigation, suspension and termination of Khillah, including Chief Karianne Thomas, Assistant Chief Jeff VanderWiere, and Sergeant Robert Holdwick, are white.

      **ANSWER: Denied as these allegations are untrue.**

d.      White officers who engage in misconduct regularly receive lesser discipline than non-white officers, including Khillah, when accounting for the severity of their misconduct, their performance and disciplinary history, and the totality of the surrounding circumstances.

      **ANSWER: Denied as these allegations are untrue.**

e.      Examples of disparate treatment between white officers and non-white officers, including Khillah, include, but are not limited to:

    i.    White officers engaging in sexual conduct while on duty and receiving only suspensions for such misconduct;

      **ANSWER: Denied as these allegations are untrue.**

    ii.    White officer beating a black teenager, while handcuffed, leading to a civil rights lawsuit against the City, and receiving only a 2-day suspension;

      **ANSWER: Denied as these allegations are untrue.**

    iii.    White officers failing to recognize and seek medical treatment for a black jail inmate who died in custody, leading to litigation and a settlement payment of $810,000 to the victim's family. The white officers received only one-day suspensions.

      **ANSWER: Denied as these allegations are untrue.**

    iv.    White officers making errors or false statements in their reports without scrutiny, documentation or discipline.

      **ANSWER: Denied as these allegations are untrue.**

    f.      As part of the investigation into Khillah's conduct in the February 6, 2018 traffic stop, in order to build a pretextual case of misconduct against Khillah, Defendant intentionally and with deliberate indifference advanced an erroneous interpretation of search and seizure law, specifically with regard to the scope of vehicle searches involving searches of containers in vehicles.

        **ANSWER: Denied as these allegations are untrue.**

40.    As a direct result of the adverse treatment alleged in the paragraphs above, Plaintiff has experienced and will continue to experience economic damages including lost wages and benefits and other forms of compensation, both past and future.

    **ANSWER: Denied.**

41.    As a direct result of the adverse treatment alleged above, Plaintiff has experienced and will continue to experience non-economic damages including humiliation, mental anguish, outrage, embarrassment and loss of reputation, and loss of business expectancy.

    **ANSWER: Denied.**

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1983**
**RACE, ETHNICITY AND COLOR DISCRIMINATION AND RETALIATION**

42.    Plaintiff incorporates and re-alleges the foregoing paragraphs by reference.

    **ANSWER: Defendant re-incorporates its Answers to the above paragraphs as if fully restated herein.**

43.    42 U.S.C. § 1983 provides the federal damages remedy for the violation of rights guaranteed by 42 U.S.C. § 1981.

**ANSWER: No response is required since this allegation states the legal conclusion of the pleader and the pleader's unsupported statement of law. In further response, Defendant states that its actions did not violate any of Plaintiff's rights.**

44.     Under 42 U.S.C. § 1981, Defendant was obligated to refrain from discriminating against Plaintiff because of his race, ethnicity and/or color and from retaliating against Plaintiff because of his complaints of discrimination.

**ANSWER: No response is required since this allegation states the legal conclusion of the pleader and the pleader's unsupported statement of law. In further response, Defendant states that Plaintiff was not discriminated against or retaliated against by Defendant.**

45.     In violation of this statutory obligation, Defendant discriminated against Plaintiff because of his race, ethnicity and/or color and retaliated against Plaintiff because of his complaints of discrimination.

**ANSWER: Denied as these allegations are untrue.**

46.     In violation of this statutory obligation, Defendant suspended and terminated Plaintiff because of his national origin/race.

**ANSWER: Denied as these allegations are untrue.**

47.     In violation of this statutory obligation, Defendant suspended and terminated Plaintiff due to his complaints of discrimination.

**ANSWER: Denied as these allegations are untrue.**

48.     Defendant City of Kalamazoo acted pursuant to an official policy, custom or practice and is directly (not just vicariously) liable for the violation of Khillah's rights under 42 U.S.C. § 1981, as enforced through 42 U.S.C. § 1983:

**ANSWER: Denied as these allegations are untrue.**

a.      The person who made the decision to suspend Plaintiff and terminate Plaintiff's employment because of Plaintiff's race, ethnicity and/or color and because of Plaintiff's complaints of discrimination possesses final authority for making decisions that constitute official policy for purposes of municipal liability under 42 U.S.C. § 1983 and made the decisions to suspend and terminate Plaintiff; and

   **ANSWER: Denied as these allegations are untrue.**

b.      The decision to suspend Khillah because of his race, ethnicity and/or color, and in retaliation for his complaints of discrimination, was a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question; and

   **ANSWER: Denied as these allegations are untrue.**

c.      The decision to terminate Khillah's employment because of his race, ethnicity and/or color and in retaliation for his complaints of discrimination was a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

   **ANSWER: Denied as these allegations are untrue.**

49.      As a direct result of the violation of Plaintiffs civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits; Plaintiff has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

   **ANSWER: Denied as these allegations are untrue.**

50.     Defendant's conduct was willful and malicious entitling Plaintiff to punitive damages.

**ANSWER: Denied as these allegations are untrue.**

51.     Accordingly, Plaintiff requests the following relief:

    A.  An order awarding compensatory damages;

    B.  An order awarding punitive damages;

    C.  An order of reinstatement;

    D.  An order awarding statutory attorney fees and reimbursement of litigation costs; and

    E.  An order awarding such other relief the court deems just and equitable.

**ANSWER: Deny that Plaintiff is entitled to the requested relief.**

## COUNT II
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## RACE AND NATIONAL ORIGIN DISCRIMINATION AND RETALIATION

52.     Plaintiff incorporates and re-alleges the foregoing paragraphs by reference.

**ANSWER: Defendant re-incorporates its Answers to the above paragraphs as if fully restated herein.**

53.     Under Michigan law, specifically the Elliott-Larsen Civil Rights Act, Defendant was obligated to refrain from discriminating against Plaintiff because of his national origin/race and from retaliating against Plaintiff because of his complaints of discrimination.

**ANSWER: No response is required since this allegation states the legal conclusion of the pleader and the pleader's unsupported statement of law. In further response, Defendant denies that Plaintiff was discriminated or retaliated against by Defendant.**

54.     In violation of this statutory obligation, Defendant discriminated against Plaintiff because of his national origin/race and retaliated against Plaintiff because of his complaints of discrimination.

**ANSWER: Denied as these allegations are untrue.**

55.     In violation of this statutory obligation, Defendant suspended and terminated Plaintiff because of his national origin/race.

**ANSWER: Denied as these allegations are untrue.**

56.     In violation of this statutory obligation, Defendant suspended and terminated Plaintiff due to his complaints of discrimination.

**ANSWER: Denied as these allegations are untrue.**

57.     As a direct result of the violation of Plaintiffs civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits; Plaintiff has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

**ANSWER: Denied.**

58.     Accordingly, Plaintiff requests the following relief:

    A.  An order awarding compensatory damages;

    B.  An order of reinstatement;

    C.  An order awarding statutory attorney fees and reimbursement of litigation costs; and

    D.  An order awarding such other relief the court deems just and equitable.

**ANSWER: Deny that Plaintiff is entitled to the requested relief.**

## COUNT III
## VIOLATION OF THE WHISTLEBLOWERS' PROTECTION ACT

59.     Plaintiff incorporates and re-alleges the foregoing paragraphs by reference.

**ANSWER: Defendant re-incorporates its Answers to the above paragraphs as if fully restated herein.**

60.     Under Michigan law, specifically the Whistleblowers' Protection Act, Defendant was obligated to refrain from discriminating against Plaintiff because of his report of a violation of law, or suspected violation of law, to a public body.

**ANSWER: No response is required since this allegation states the legal conclusion of the pleader and the pleader's unsupported statement of law. In further response, Defendant denies that it discriminated against Plaintiff.**

61.     Plaintiff engaged in protected activity pursuant to the Whistleblowers' Protection Act by reporting violations or suspected violations of law to Chief of the KDPS.

**ANSWER: Denied as these allegations are untrue.**

62.     Plaintiff's protected activity included reporting to KDPS human resources an unlawful directive from Sergeant Holdwick to cite or issue tickets to African-American citizens based on their race.

**ANSWER: Denied as these allegations are untrue.**

63.     Plaintiff's protected activity also included reporting actions of race and national origin discrimination by Sergeant Holdwick against Khillah.

**ANSWER: Denied as these allegations are untrue.**

64.     In violation of this statutory obligation, Defendant suspended and terminated Plaintiff due to his reporting violations or suspected violations of law to a public body.

**ANSWER: Denied as these allegations are untrue.**

65.     As a direct result of the violation of Plaintiff's civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits; Plaintiff has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

**ANSWER: Denied.**

66.     Accordingly, Plaintiff requests the following relief:

A.  An order awarding compensatory damages;

B.  An order of reinstatement;

C.  An order awarding statutory attorney fees and reimbursement of litigation costs; and

D.  An order awarding such other relief the court deems just and equitable.

**ANSWER: Deny that Plaintiff is entitled to the requested relief.**

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Defendant, and award him economic and non-economic damages sustained as a direct and proximate result of Defendant's conduct, punitive damages, all other equitable and injunctive relief deemed appropriate at the time of final judgment, together with costs and interest, attorney fees, and all such other legal and equitable relief as this court deems just and proper.

**WHEREFORE, Defendant requests that this Honorable Court deny Plaintiff's requests that judgment be entered against Defendant and award judgment in favor of Defendant against Plaintiff and award costs and fees, as well as any other relief it deems just and proper.**

## **<u>AFFIRMATIVE DEFENSES</u>**

NOW COMES Defendant City of Kalamazoo, by and through its attorney, Sarah R. Wenzlick, and assert the following Affirmative Defenses:

1.      Plaintiff's alleged damages, if any, were caused in whole or in part by his own acts or omissions.

2.      The City has complete or limited immunity from the stated causes of action.

3.      Defendant is entitled to governmental immunity.

4.      The doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983. *See Lorenzo v. Corrections Corp. of America*, 23 Fed. Appx. 348, 350 (6th Cir. 2001).

5.      Plaintiff has failed to state a claim upon which relief can be granted against Defendant.

6.      Plaintiff seeks punitive damages in this action. Local governments and official capacity claims are immune from punitive damages liability under § 1983. *See City of Newport v. Fact Concerts*, 453 U.S. 247 (1981).

7.      Plaintiff fails to state a claim upon which relief can be granted for Exemplary or Punitive damages, under Michigan Law.

8.      Defendant reserves the right to file further affirmative defenses upon the completion of discovery, the amendment of pleadings, or the discovery of further facts or evidence in this cause.

**WHEREFORE,** based on the foregoing, Defendant the City of Kalamazoo denies that Plaintiff is entitled to any damages. Defendant prays that this Honorable Court grant judgment in its favor and against Plaintiff on all aspects of his complaint and further requests that this

Honorable Court rule in Defendant's favor and grant fees, costs, and such other relief that this

Court deems just and appropriate.

## JURY DEMAND

Defendant respectfully requests a trial by jury.

Respectfully Submitted,
CLYDE J. ROBINSON

Kalamazoo City Attorney

By:      /s/ Sarah R. Wenzlick_____

Sarah R. Wenzlick (P79316)
Assistant City Attorney
Office of the Kalamazoo City Attorney
241 W. South Street, Suite 301
Kalamazoo MI, 49007