UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

AMIR KHILLAH,

    Plaintiff,

v.

CITY OF KALAMAZOO,
a Municipal Corporation,

    Defendant.

Case No. 18-cv-00696

Hon. Janet T. Neff
United States District Judge

---

Michael L. Pitt (P24429)
Kevin M. Carlson (P67704)
PITT, MCGEHEE, PALMER,
BONANNI & RIVERS, P.C.
Counsel for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mpitt@pittlawpc.com
kcarlson@pittlawpc.com

Richard O. Cherry (P77272)
Sarah R. Wenzlick (P79316)
Kalamazoo City Attorney
Counsel for Defendant
241 W South St.
Kalamazoo, MI 49007
(269) 337-8185
cherryr@kalamazoocity.org
wenzlicks@kalamazoocity.org

---

**JOINT STATEMENT OF FACTS**

1

Plaintiff and Defendant, through counsel, submit the following joint statement of facts for purposes of Defendant's motion for summary judgment:

## STATEMENT OF FACTS

1. Plaintiff Amir Khillah began his employment with the City of Kalamazoo as a public safety officer in March 2015. Ex. 28 Khillah 21.

2. Khillah was born in Egypt and moved to the United States for religious asylum with his family in 1992. *Id*. at 9-10.

3. In January 2018, Khillah was placed on disciplinary suspension for 4 days for writing an inaccurate report. Ex. 3, IA 2017-0012; Ex. 19 Discipline Summary, Bates 822.

4. On February 6, 2018, Khillah monitored a known drug house on Reed Street. Ex. 28, Khillah 142.

5. Khillah observed a car with two passengers pulled up to the house, stopped for a very brief period, and left. Ex. 28 Khillah 145-6; Def. Ex. 4, Incident Report, Bates 461.

6. Khillah followed the car and stopped it for failing to stop before the limit line at a red light. Ex. 4, IA 2018-0001 pg. 000461.

7. Khillah spoke with the driver, Kevin Bucknell, who was unlicensed to drive. Def. Ex. 5, Video.

8. Khillah instructed Bucknell to exit the vehicle. *Id.*

9. Bucknell consented to a search of his person and the car. *Id*.

10. Khillah subsequently asked the passenger, Breazeale, to exit the car, telling her, "Ma'am, can you do me a favor and step out here? You can just leave everything there; I want to talk to you out here." *Id*.

11. Breazeale exited the car and placed her purse on the seat as directed. *Id*.

12. Breazeale consented to a search of her person, which Khillah performed before searching the interior of the car based on the driver's consent. *Id.*

13. When Khillah searched the vehicle, he also searched Breazeale's purse, where he found syringes containing methamphetamine and a BB gun. *Id.*

14. Khillah arrested Breazeale and charged her with felony possession of methamphetamine.

15. Khillah contacted his Sergeant, Sgt. Holdwick, and informed him of the consent search of the vehicle and resulting arrests. Ex. 4 IA 2018-0001 Bates 473-475.[1]

16. On February 6, 2018 Sgt. Holdwick issued a commendation to Khillah for his arrest of Breazeale. *Id.*

17. In his report, Khillah stated, "I made contact with the passenger, Breazeale, and asked her to exit the vehicle and talk to me. Breazeale was holding her purse in her lap at this time, I observed a grip of a handgun in the purse. I asked her to leave her belongings in the vehicle and exit and she complied." Def. Ex. 4, IA 2018-0001, Bates 461.

18. On either February 7 or February 8, 2018, Holdwick discussed the Breazeale case with Khillah's partner, PSO Slenk, who stated he was not aware of Khillah observing a gun in Breazeale's purse and Khillah per KDPS practice had not alerted him. Ex. _ Holdwick Memo, Def. Ex. 4, IA 2018-0001 Bates 470-2.

19. On February 12, 2018, Holdwick reviewed the video of the Breazeale search and arrest and concluded that Khillah could not have seen a gun in the purse before searching it by hand. *Id.*

---

[1] Sgt. Holdwick mistakenly wrote in his daily activity report that Breazeale gave Khillah consent to search the vehicle, but it was the driver Bucknell who actually gave Khillah consent to search the vehicle. Def. Ex.4 IA 2018-0001 Bates 473-475; Def. Ex. 5, Video.

20. On February 13, 2018, Holdwick's supervisors referred the matter to Assistant Chief VanderWiere for review by the Office of Professional Standards. Ex. 35 VanderWiere timeline, Bates 4925-6; Ex. 4, IA 2018-0001 Bates 470-2.

21. VanderWiere directed Holdwick's supervisors to have Holdwick review the video with Khillah. *Id*.

22. On February 16, 2018, Holdwick met with Khillah. Def. Ex. 4, IA 2018-0001 Bates 472.

23. When reviewing the video, Khillah told Holdwick that the first time he could see the gun in the purse was when he searched it by hand, and not prior to the hand search. *Id*.

24. Khillah asked Holdwick if he could work on revising or clarifying the report, but by then the charge had already been approved by the prosecutor, and Holdwick told him not to. Ex. 11, Pre-D Trans., pg. 9.

25. Holdwick referred the matter back to his supervisor, who in turn turned it over to OPS for investigation, which commenced on February 19, 2018. Def. Ex. 4 IA 2018-0001, Bates 354.

26. After finding out that he was being investigated, Khillah, on February 19, 2018, informed Lt. Gretchen Mayo that Sgt. Holdwick had been targeting him, that he believed Holdwick was trying to force him to quit, and that Holdwick had once called him a racial slur. Def. Ex. 8, Mayo memo, Bates 602-3.

27. Mayo referred the complaint to her Captain. *Id*.

28. On February 20, 2018, Khillah sent an e-mail to KDPS Chief Karianne Thomas raising several issues of discrimination and harassment at KDPS, including the harassment against him by Holdwick. Def. Ex. 9 Pl. Email to Chief Thomas.

29. Chief Thomas was on a cruise when this email arrived in her inbox. Ex. 7 VanderWiere Dep. pg. 103 ln.23-25 thru pg. 114.

*30.* All of Chief Thomas' emails had been forwarded to her administrative assistant for review. *Id.*

31. Chief Thomas's administrative assistant forwarded the email to acting Chief, Assistant Chief VanderWiere. *Id.*

32. Assistant Chief VanderWiere reviewed the email and as acting Chief forwarded the email and Lt. Mayo's memo to the head of the City of Kalamazoo's Human Resource Department as per policy. *Id.*

33. Chief Thomas never saw Plaintiff's email or Mayo's memo. Ex. 10 Thomas Dep. pg. 74 ln.21-25 thru pg. 77.

34. On March 1, 2018, VanderWiere interviewed Khillah. Def. Ex. 4, IA 2018-0001 Bates, 403-432.

35. Khillah was accompanied by his union president and union attorney. Id.

36. Khillah explained that that he had not intentionally lied or falsified his report. *Id*.

37. Khillah told VanderWiere that the search was based on consent from the driver to search the vehicle and consent of Breazeale to search her person. *Id*. at Bates 406-407.

38. At the end of the investigation, Internal Affairs made a finding that Plaintiff falsified his report regarding the timing of when he observed the gun in Breazeale's purse, based on the conversation Khillah had with Sgt. Holdwick about probable cause and seeing a gun the very next day. Def. Ex. 4, IA 2018-0001, Bates 378-9.

39. On March 26, 2018, Thomas held a pre-determination hearing to allow Khillah to present his side of the case. Def. Ex. 11, Transcript.

40. Khillah assured the Chief that nothing he did was malicious and that any mistakes in the search and report were made in good faith. *Id*. at 5.

41. The next day, March 27, 2018, Thomas held a final determination hearing. Def. Ex. 12, Transcript.

42. Chief Thomas indicated that "[a]fter reviewing the report conducted by the Office of Professional Standards, the materials submitted, and comments made by the KPSOA attorney, and your explanation, she was willing to give [Khillah] the benefit of the doubt he did not intend to deceive or file a false police report." Ex. 12 Determination Trans., Bates 728.

43. She further stated that given his history which included a recent suspension for four days, and considering the seriousness of his actions and the negative impact on the case, the City, the Department and most importantly the citizens we serve, it is absolutely necessary that he correct this pattern of errors in report writing and application of search and seizure law. *Id*.

44. Chief Thomas stated that she was willing to give Khillah a last chance in lieu of termination, provided he met the performance requirements and other conditions set forth in a last-chance agreement." *Id*.

45. In April 2018, assistant Kalamazoo County Prosecutor Chelsea Huber notified VanderWiere by email that a criminal defense attorney, Kiana Garrity, had made accusations against Khillah's brother and that Garrity claimed to have made a file regarding KDPS "dirty cops". Ex. 38, Huber's Email to VanderWiere.

46. On June 25, 2017, Plaintiff reported that he observed Jerry Joyce a parole absconder reaching in the trunk of a silver Dodge Charger in front of 461 Egleston Ave. (See Ex. 14 IA2018-0008A at 000855).

47. Plaintiff claimed that he ordered Joyce to stop but Joyce quickly walked into the house. *Id*.

48. KDPS got consent to search the house from Joyce's wife and Joyce was not found in the house. *Id.*

49. While police were still on scene, Joyce's wife called Joyce from her cell phone, Plaintiff asked to speak with him. *Id.*

50. Joyce's wife handed Plaintiff her phone. *Id.*

51. Plaintiff told Joyce that he would have to write a case on him if he did not come back. *Id.*

52. In the video, Plaintiff drives past the front of a silver Dodge Charger with its trunk up. (Ex. 22 Khillah In-Squad Video Joyce, at 2:54:50); (See Ex. 14 IA2018-0008A pg. 000919-920).

53. Plaintiff drives past the Dodge Charger and drives past a couple more houses before he makes a u-turn at the end of the street. *Id.* at 2:55:05. Plaintiff's in squad car camera never picks up a person near the trunk of the Charger. *Id.* Eventually, you can see video a black male walking slowly toward the house, and eventually up the stairs towards the front door of the house. *Id*. at 2:55:14. On September 18, 2016 during an attempted traffic stop that he and his partner attempted to detain a subject was driving a convertible and with no registration plate and had been playing loud music. See Ex. 15 IA2018-0008B pg. 000960.

54. Plaintiff and his partner both approached the vehicle on foot. *Id.*

55. After he and his partner gave several commands for the subjects to turn off the vehicle, and the subjects did not comply Plaintiff stated that that he drew his firearm and held them at gunpoint. *Id.*

56. Plaintiff stated that "[t]he driver then accelerated at me at a high rate of speed. I was struck by the driver's side of the vehicle." *Id.*

57. The vehicle was able to escape, and the driver Higgins was apprehended on a subsequent date. *Id.*

58. Sergeant Loso reviewed the video of the incident with Khillah. See Ex. 15 IA2018-0008B pg. 001001-1002.

59. However, another sergeant, Sgt. Turner approved Khillah's report. *Id*.

60. On October 22, 2019 through October 24, 2019, Plaintiff's arbitration hearing was held where Defendant's had to present evidence that it had "just cause" to terminate Plaintiff. Ex. 17 Arb. Award.

61. On March 17, 2020, a binding award was entered in Defendant's favor that held Plaintiff was terminated for just case. *Id.*

Respectfully submitted,

| | |
|---|---|
| */s/Kevin M. Carlson* | */s/ Sarah R. Wenzlick* |
| Michael L. Pitt (P24429) | Richard O. Cherry (P77272) |
| Kevin M. Carlson (P67704) | Sarah R. Wenzlick (P79316) |
| PITT, MCGEHEE, PALMER, | Kalamazoo City Attorney |
| BONANI & RIVERS, P.C. | Counsel for Defendant |
| Counsel for Plaintiff | 241 W South St. |
| 117 West Fourth Street, Suite 200 | Kalamazoo, MI 49007 |
| Royal Oak, MI 48067 | (269) 337-8185 |
| 248-398-9800 | cherryr@kalamazoocity.org |
| mpitt@pittlawpc.com | wenzlicks@kalamazoocity.org |
| kcarlson@pittlawpc.com | |